Fuld, J.
The primary question presented by this appeal is whether the provisions of the new CPLR (302), effective September 1, 1963, and the principles embodied therein, enlarging the bases for acquiring personal jurisdiction over foreign corporations and nonresident persons, have retroactive application to previously instituted actions.
This action, to recover damages for breach of a joint venture agreement, alleged in the complaint to have been made in New York in 1955, was instituted in the Supreme Court in 1960. The plaintiff is a Connecticut resident who formerly resided in New York, the defendant International Bank, an Arizona corporation with its principal offices in Washington, D. C. Service of the summons and complaint was made on a director of the defendant in New York. Asserting that it has no office or other facilities in this State, and that it does no business now and has never engaged in any business activity of any kind here, the defendant moved for an order setting aside service of the summons and complaint and dismissing the complaint on the ground that it is not subject to the jurisdiction of our State courts. Special Term granted the motion in August, 1960, the Appellate Division unanimously affirmed the resulting order in March of 1962 and we granted leave to appeal in May, 1963 — all prior to the effective date of the CPLR.
Beyond the bare allegation in the complaint that the contract in suit was “made” in New York,[1] the record is devoid of any factual showing in support of that allegation or of the plaintiff’s submission that there is sufficient nexus between this State and the defendant foreign corporation, or the transaction in suit, to render such defendant amenable to the process of our State courts.
*285 We may briefly dispose of the plaintiff’s reliance on former section 225 of the General Corporation Law (now Business Corporation Law, § 1314, subd. [b]), delineating the classes of cases — including an “ action * * * brought to recover damages for the breach of a contract made within the state ” (subd. 1)—in which our courts may entertain an action by a nonresident against a foreign corporation. That section, reflecting this State’s policy against lending its courts to the resolution of disputes between nonresident parties (cf. Matter of Banque de France v. Supreme Ct., 287 N. Y. 483, 486; Murnan v. Wabash Ry. Co., 246 N. Y. 244), was designed solely to block out an area of subject-matter jurisdiction in which our courts are made available for suits, otherwise properly brought, against a foreign corporation. (See, e.g., Swift & Co. v. Obcanska Zalozna V. Karline, 245 N. Y. 570; Robinson v. Oceanic Steam Nav. Co., 112 N. Y. 315, 322-323; Cala v. De Ridder Ltda., 17 A D 2d 729.) That section 225 was never intended to measure the permissible reach of the courts’ in personam jurisdiction over foreign corporations is plainly evidenced by the Legislature’s juxtaposition of that section with its companion section 224 (now Business Coi'poration Law, § 1314, subd. [a]), which sanctions the maintenance of any action by a resident against a foreign corporation. In short, both sections presuppose that the particular foreign corporation is otherwise subject to the jurisdiction of our State courts. (See Gregonis v. Philadelphia & Reading Coal & Iron Co., 235 N. Y. 152, 158.)
Under our decisional law prior to the adoption of the CPLR, a foreign corporation, not authorized to do business in this State, was held amenable to local suit only if it was engaged in such a continuous and systematic course of “ doing business ” here as to warrant a finding of its “ presence ” in this jurisdiction. (See, e.g., Miller v. Surf Props., 4 N Y 2d 475; Elish v. St. Louis Southwestern Ry. Co., 305 N. Y. 267; Tausa v. Susquehanna Coal Co., 220 N. Y. 259.) It is clear that, at the time this action was brought, the defendant bank was not so engaged. The “ doing business ” test was initially dictated by the due process requirements of the Federal Constitution as formerly interpreted by the United States Supreme Court. (See Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U. S. 516; *286 Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 268; International Harvester v. Kentucky, 234 U. S. 579, 586, 587.)
In 1945, however, the Supreme Court in its landmark decision in International Shoe Co. v. Washington (326 U. S. 310), relaxing the demands of due process, squarely rejected the requirements of " presence ” and " doing business” and held that " due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘ traditional notions of fair play and substantial justice ’ ” (326 U. S., at p. 316). And, thereafter, in McGee v. International Life Ins. Co. (355 U. S. 220, 223), the court upheld the power of a state to subject a foreign corporation to suit in its courts on an isolated insurance contract "which had substantial connection with that State ’’ [2]
While those decisions broadly expanded the power of this State to subject foreign corporations and nonresident individuals, not ‘ ‘ present ’ ’ in the forum, to the personal jurisdiction of its courts, the Legislature took no steps to exercise that power until the enactment of the CPLR. The courts likewise continued to apply the traditional " doing business ” test (see, e.g., Miller v. Surf Props., 4 N Y 2d 475, supra; Elish v. St. Louis Southwestern Ry. Co., 305 N. Y. 267, supra; Sterling Novelty Corp. v. Frank & Hirsch Distr. Co., 299 N. Y. 208; Fremay v. Modern Plastic Corp., 15 A D 2d 235), though there were occasional suggestions that that standard might be relaxed in accordance with the later Supreme Court decisions. (See Matter of La Belle Creole Int. v. Attorney-General, 10 N Y 2d 192, 197; Elish v. St. Louis Southwestern Ry. Co., 305 N. Y. 267, 269, supra; Pine & Co. v. McConnell, 298 N. Y. 27, 30.)
The plaintiff now seeks to have this court modify the prior *287 decisional law, without regard to the legislative changes effected by the CPLR, by declaring retroactively that the new jurisdictional standards set forth in International Shoe Co. (326 U. S. 310, supra) and McGee (355 U. S. 220, supra) were automatically rendered applicable in this action against defendant corporation at the date of its commencement in July, 1960. His position seems to be that the " doing business ’ ’ restriction was the product not of legislative action but of judicial decision predicated on prevailing Supreme Court interpretations of the due process clause, and that such erstwhile restriction should correspondingly be judicially relaxed to conform to the more recent Supreme Court pronouncements. And, indeed, this has been the approach taken in several states. (See, e.g., Jahn & Son v. Superior Ct., 49 Cal. 2d 855, 858, 859; Huck v. Chicago, St. P., M. & O. Ry. Co., 4 Wis. 2d 132.)
Although this court has not hesitated to discard prior precedent where adherence thereto ‘ ‘ offers not justice but unfairness, not certainty but doubt and confusion ” (Bing v. Thunig, 2 N Y 2d 656, 667; see, also, Woods v. Lancet, 303 N. Y. 349, 355), it is preferable to defer to legislative action where the fashioning of a new rule would require “ consideration of a variety of possible remedies ” or, perhaps, result in unfairness to persons who have justifiably relied on a prior rule of long standing. (See, e.g., Woods v. Lancet, 303 N. Y. 349, 355-356, supra; Coyne v. Campbell, 11 N Y 2d 372, 376.)
There can be no doubt that International Shoe Co. (326 U. S. 310, supra) and McGee (355 U. S. 220, supra) opened a broad, largely undefined area for state exercise of jurisdiction over foreign corporations. (See Hoffman, The Plastic Frontiers of State Judicial Power Over Non-Residents, 24 Brooklyn L. Rev. 291, 297; Note, 73 Harv. L. Rev. 909, 998-1008.) The standard declared in those cases, of “ traditional notions of fair play and substantial justice ”, is itself, at best, rather vague and nebulous. The formulation of specific rules to implement such a standard seems more appropriately the function of the Legislature than of the courts. There is the added consideration that legislation, as distinguished from judicial revision, is the more suitable vehicle for fixing precise jurisdictional guidelines for the future; only through such legislation may foreign corporations be put on notice that they run *288 the risk of being exposed to suit here, even though they may not be “ doing business ” in New York, if they “ have occasion to enter the State for the purpose of making contracts here (Ames v. Senco Prods., 1 A D 2d 658; see, also, Restatement, Conflict of Laws 2d, Tent. Draft No. 3 [April, 1956], § 84, Comment e, “Necessity for statute”; id. § 85, Comment d, “ Necessity for statute ”.)
Indeed, it would be particularly inappropriate for the courts now to undertake the formulation of new rules, and hold them applicable to cases instituted years ago, in the face of the Legislature’s recent adoption of its own new rules on the subject in the CPLR. Section 302 of that statute discards the concept of ‘ ‘ doing business ” as a test of jurisdiction and substitutes therefor the broader standard of ‘[1] transacting any business ”; it further abandons the requirement of the defendant’s “ presence ” in cases involving real property situated in this State and tortious acts (other than defamation) committed here. Although the section does not in terms refer to corporations, its application to foreign corporations, as well as to nonresident individuals, seems clear. (General Construction Law, § 22; see 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.05.) Modelled on the Illinois Civil Practice Act (Ill. Stat. Ann., ch. 110, § 17 [Smith-Hurd, 1956]), the section, according to its drafters (N. Y. Advisory Comm. Rep. [N. Y. Legis. Doc., No. 13, 1958], p. 39), was designed “ to take advantage of the constitutional power of the state of New York to subject non-residents to personal jurisdiction when they commit acts within the state ”.
It is unnecessary for us now to determine the exact reach of the new statute or to decide whether its provisions would encompass the cause of action here involved (cf. 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 302.06-302.08), in view of our conclusion that the statute does not have the effect of retroactively validating the jurisdictionally defective service of process made in this action.
Nor need we consider possible constitutional objections that might be urged against the Legislature’s giving retroactive effect to a procedural statute of this kind in particular situations. (See Note, Retroactive Expansion of State Court Jurisdiction over Persons, 63 Col. L, Rev. 1105, 1116-1118, 1121-1124.) We *289 note, however, that, in upholding the retroactive application of the somewhat similar provisions before it in the McGee case, the United States Supreme Court observed that such a statute is “ remedial, in the purest sense of that term, and neither enlarge [s] nor impair[s] * * * substantive rights or obligations ”, its effect being merely to provide the plaintiff with a new ‘ ‘ forum to enforce whatever substantive rights ’ ’ he might have against the defendant. . (McGee v. International Life Ins. Co., 355 U. S. 220, 224, supra.) The Illinois Supreme Court has similarly sustained the retroactive application of the Illinois statute, from which CPLR 302 was derived, to a suit instituted subsequent to the enactment of the new statute on a cause of action which had previously accrued. (See Nelson v. Miller, 11 Ill. 2d 378, 382-383.)
Whether, and to what extent, such a procedural statute is to be accorded retroactive effect is normally a matter of ascertaining the legislative intent. Certain basic guidelines to that end are provided by our decisions. It is thus presumed, absent any contrary indication, that the Legislature intended “ Changes in the form of remedies ”, effected by a statute such as this, to be “ applicable to proceedings thereafter instituted for the redress of wrongs already done.” (Matter of Berkovitz v. Arbib & Houlberg, 230 N. Y. 261, 270; see, also, Coane v. American Distilling Co., 298 N. Y. 197, 204; Preston Co. v. Funkhouser, 261 N. Y. 140, 145.) But different considerations are involved and a “ different problem arises ”, this court wrote in the Berkovitz case (230 N. Y., at p. 270), “ when proceedings are already pending. There is then a distinction to be noted. The [procedural] change is applicable even then if directed to the litigation in future steps and stages * * *. It is inapplicable, unless in exceptional conditions, where the effect is to reach backward, and nullify by relation the things already done ”.
In other Avords, while procedural changes are, in the absence of words of exclusion, deemed applicable to “ subsequent proceedings in pending actions ” (Lazarus v. Metropolitan El. Ry. Co., 145 N. Y. 581, 585), it takes “ a clear expression of the legislative purpose to justify ” a retrospective application of even a procedural statute so as to affect proceedings previously taken in such actions. (Coane v. American Distilling Co., 298 *290 N. Y. 197, 204, 205, supra; see, also, Shielcrawt v. Moffett, 294 N. Y. 180, 188-189, 191; Southwick v. Southwick, 49 N. Y. 510, 517; People ex rel. Central New England Ry. Co. v. State Tax Comm., 261 App. Div. 416, 418.) No such “ clear expression ” is to be found in the CPLR of a design by the Legislature to affect proceedings theretofore taken in a pending action. The Legislature has in CPLR 10003 stated that the “ act shall apply to all actions * * * commenced” after its effective date. As respects pending actions, however, the same section simply declares that the new act shall — except where it “ would not be feasible or would work injustice ” — apply “ to all further proceedings ” in such actions, thereby plainly differentiating between “future steps and stages” of the litigation a,nd prior proceedings therein. (Cf. Matter of Berkovitz v. Arbib & Houlberg, 230 N. Y. 261, 270, supra.)
In short, with the possible exception of cases in which the acts serving as the predicate for jurisdiction under the new section are shown to have been carried out in justifiable reliance on the prior law (see Nelson v. Miller, 11 Ill. 2d 378, 383, supra; see, also, 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.04; Leflar, Conflict of Laws, 1963 Ann. Sur. Amer. Law, 57, 61; Note, Retroactive Expansion of State Court Jurisdiction over Persons, 63 Col. L. Rev. 1105, 1124-1128), CPLR 302 has retroactive effect to the extent of embracing suits instituted after its effective date but based on previously accrued causes of action. On the other hand, it is manifest, despite some lower court cases to the contrary (see, e.g., Steele v. De Leeuw, 40 Misc 2d 807; Rand, Inc., v. Joyas De Fantasia, 41 Misc 2d 838), that the new section does not apply to actions instituted prior to its effective date and does not operate, by relation back, to validate an attempted service of process which was jurisdictionally defective when made, because in such a case we deal with a prior service itself and not with a “ further proceeding ” in the action (cf. CPLR 10003).
The judgment appealed from should be affirmed, with costs.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke. Scileppi and Bergan concur.
Judgment affirmed.

. The court has, however, since McGee (355 U. S. 220, supra), cautioned that restrictions on the exercise by state courts of personal jurisdiction over foreign corporations continue to exist as a consequence of territorial limitations on the power of such, courts and that a corporation may not be subjected to a suit in a foreign forum in the absence of a showing of “some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” (Hanson V. Denckla, 357 U. S. 235, 253.)