## Richmond

GOLDING BROTHERS, INC. v. OVERNITE TRANSPORTATION CO.

October 8, 1973.

Record No. 8201.

Present, All the Justices.

*Abraham J. Dere* (*Cantor & Cantor*, on brief), for plaintiff in error.

*Samuel J. T. Moore, Jr.* (*Moore & Pollard*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

The single question involved on this appeal is whether a foreign judgment obtained against a Virginia corporation is void for lack of in personam jurisdiction of the corporation.

On October 13, 1967, Golding Brothers, Incorporated (Golding), a textile manufacturer with its principal offices in New York, obtained a default judgment in the Civil Court of the City of New York in the amount of $2,882.23 against Overnite Transportation Company (Overnite), a motor freight carrier with its headquarters in Richmond, Virginia. The judgment arose out of a claim against Overnite for damages to goods owned and shipped by Golding from Sand Springs, Oklahoma, to Gaffney, South Carolina. The shipment was

received by Overnite from a connecting carrier in Atlanta, Georgia, for delivery to its destination.

Process on the action instituted in the New York court against Overnite was served on Thomas Rooney, its "managing agent" in New York. Although Overnite acknowledged receipt of the process, it elected not to appear and defend the action.

Golding instituted the present action against Overnite to enforce the New York judgment. Overnite filed a special plea and a motion to quash the action on the ground that the judgment was unenforceable in Virginia because the New York court did not have personal jurisdiction of Overnite. After hearing evidence on the special plea and motion to quash, the trial court, in a written opinion, held that the service of process in New York was invalid on the grounds that Overnite was not "doing business" in New York, and that maintenance of the suit against Overnite in New York offended "traditional notions of fair play and substantial justice." We granted Golding a writ of error to the judgment sustaining Overnite's special plea and motion to quash.

Golding contends there was ample proof in the record that Overnite was "doing business" in New York to such an extent as to be legally amenable to the process served in that State.

The evidence shows that at the time Golding instituted its action in New York Overnite had an office in the textile business area of New York City, which was staffed by Thomas Rooney and a secretary. Rooney was a resident of Long Island, New York, a full-time employee of the company, and its eastern sales manager. He had been an employee of Overnite in its New York office since at least 1957. Overnite's name was listed on the directory located in the lobby of the building where it had its office; it had a listing and an advertisement in the yellow pages of the New York C' ~ telephone directory; and it had a direct telephone line between its New York office and its Richmond office. The salaries of the two full-time employees, the rent, and all other expenses of operating the New York office were paid by Overnite from its Richmond office. It did not have a bank account in New York.

Rooney's principal duty in New York was to call on transportation personnel, advising them of Overnite's services and soliciting their business in the eight southern states in which it had a certificate to operate. Rooney distributed Overnite's promotional literature and carried a business card showing the company's location in New York,

He was reimbursed by Overnite for solicitation expenses and his New York Traffic Club membership dues. The exact amount of revenues generated by Rooney's activities does not appear in the record, but a representative of Overnite estimated that it was in excess of $100,000 a year. When asked on cross-examination if it was as much as $1,000,-000 a year, he replied that it was not.

In addition, Rooney was involved in other business activities for Overnite. While he did not actually adjust claims, he "intervened" concerning some accounts and made recommendations for adjustment. The direct telephone line with the New York office was utilized to some extent by the claims department of the Richmond office to have Rooney contact claimants who were dissatisfied with the handling of their claims. Although Rooney did not collect Overnite's accounts, which was the responsibility of the Richmond office, he was active in urging Overnite's delinquent customers to pay their accounts.

Freight moving out of New York on other lines could interconnect with Overnite's lines operating in those states where it had a certificate. None of Overnite's tractor-trailers carried freight into or out of New York since it had no authority to operate in that state. At times, however, some of Overnite's trailers were physically present in New York under lease to other carriers.

Overnite admitted that Golding had a prima facie case of negligence against it for damages in handling the shipment.

Golding acknowledged, in its argument before us, that if the New York court did not have jurisdiction to enter the judgment sued on, it was void and unenforceable in Virginia. But it argues that under § 301 of the Civil Practice Law and Rules of New York (CPLR), and the case law of that State, Overnite was "doing business" in New York and that it was amenable to process there.

Both parties agree that we must look to the law of New York to determine the validity of the judgment.

Section 301 (CPLR), in pertinent part, provides:

"A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."

This provision was enacted in 1963, subsequent to the Supreme Court's landmark decision in *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). There the Court declared that a state is permitted to exercise personal jurisdiction over a non-resident defendant

when the defendant, if he is not present in the forum state, has "certain minimum contacts with it [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Id. at 316.

Hence § 301 (CPLR) retained New York's more restrictive pre-*International Shoe* jurisdictional power and reaffirmed the preceding case law of the State defining the power of New York courts to exercise in personam jurisdiction, including the "doing business" test which is controlling here. *Bryant* v. *Finnish National Airline*, 15 N.Y.2d 426, 430, 208 N.E.2d 439, 440, 260 N.Y.S.2d 625, 627 (1965); *Simonson* v. *International Bank*, 14 N.Y.2d 281, 287, 200 N.E.2d 427, 429-30, 251 N.Y.S.2d 433, 437 (1964); *Blount* v. *Peerless Chemicals (P.R.) Inc.*, 316 F.2d 695, 696 (2d Cir. 1963).

New York has no precise test for determining whether or not a foreign corporation is "doing business" within the State; each case is analyzed and determined according to its own particular facts. *Tauza* v. *Susquehanna Coal Co.*, 220 N.Y. 259, 268, 115 N.E. 915, 918 (1917); *La Belle Creole* v. *Attorney-General*, 10 N.Y.2d 192, 197, 176 N.E.2d 705, 708, 219 N.Y.S.2d 1, 5 (1961). Certain guidelines, however, have been established by New York case law.

In *Tauza, supra,* the court held that a foreign corporation was "doing business" in New York when its activities within the State were not occasional, casual or isolated, but rather had a "fair measure of permanence and continuity" so as to warrant a finding of its presence there. *See also Simonson* v. *International Bank, supra,* 14 N.Y.2d at 285, 200 N.E.2d at 429, 251 N.Y.S.2d at 436; *Frummer* v. *Hilton Hotel Internat'l, Inc.*, 19 N.Y.2d 533, 536, 227 N.E.2d 851, 853, 281 N.Y.S.2d 41, 43, *cert. denied* 389 U.S. 923 (1967). Other cases have characterized the degree of activity required as a "continuity of action from a permanent locale." *See Sterling Novelty Corporation* v. *Frank & Hirsch Distributing Co., Ltd.*, 299 N.Y. 208, 210, 86 N.E.2d 564, 565, 12 A.L.R.2d 1435, 1438 (1949); *Irgang* v. *Pelton & Crane Company*, 42 Misc.2d 70, 72, 247 N.Y.S.2d 743, 746 (Sup.Ct. 1964).

Mere solicitation of business by a foreign corporation in New York does not constitute "doing business" and make it amenable to suit therein. *Miller* v. *Surf Properties, Inc.*, 4 N.Y.2d 475, 480, 151 N.E.2d 874, 876, 176 N.Y.S.2d 318, 321 (1958). But if a corporation is involved in substantial solicitation, very little evidence of other business activities in New York is required to meet its "doing business" test. *Elish* v. *St. Louis Southwestern Ry. Co.*, 305 N.Y. 267, 269, 112

N.E.2d 842, 843 (1953); *Ackert* v. *Ausman*, 29 Misc.2d 962, 967, 218 N.Y.S.2d 822, 827 (Sup.Ct. 1961), *aff'd mem.* 247 N.Y.S.2d 999 (1964); *Jaftex Corp.* v. *Randolph Mills, Inc.*, 282 F.2d 508, 510 (2d Cir. 1960).

The "cumulative significance" of all a corporation's business activities in New York, not the effect of an isolated or single activity, must be considered in determining whether the "doing business" test has been met. *Ackert* v. *Ausman, supra*, 29 Misc.2d at 966, 218 N.Y.S.2d at 826; *Hastings* v. *Piper Aircraft Corporation*, 274 App.Div. 435, 439, 84 N.Y.S.2d 580, 584 (Sup.Ct. 1948).

Moreover, under § 301 (CPLR), a claim asserted against a defendant need not arise out of any business done in New York to make it amenable to suit there. *Tauza* v. *Susquehanna Coal Co., supra*, 220 N.Y. at 268, 115 N.E. at 918. *Cf.* § 302 (CPLR).[2]

In *Bryant* v. *Finnish National Airline, supra*, the defendant corporation was an airline with executive offices in Finland. It had no flights within the United States. It had an office in New York, staffed by three full-time and four part-time employees. The office sold no tickets and made no contracts which bound the corporation. Its New York activities consisted of transmitting reservations from other airlines and travel agents to the defendant's European office and engaging in some publicity work. It maintained a New York bank account for the payment of office expenses. In holding that the defendant was amenable to suit in New York, the court noted, in distinguishing *Miller* v. *Surf Properties, Inc., supra*, (mere solicitation of business) that the business in New York was done by defendant's employees rather than by an independent contractor who acted for others as well.

In the case at bar, it is evident that in 1967 Overnite was not only engaged in substantial solicitation of business in New York, but was also engaged in other business activities there. Overnite's business activities in New York were continuous, systematic and permanent. Rooney had been Overnite's eastern sales manager since at least 1957. He was a full-time employee, and was involved in prodding Overnite's delinquent debtors and participated in freight claims work. Even though Rooney did not actually settle claims or collect money, and he was not provided a bank account in New York, the work he

2. Section 302 (CPLR) provides that New York may exercise personal jurisdiction over non-domiciliaries if the claim "arose from" a defendant's transaction of business in New York. It has no application here because Golding's action did not arise out of Overnite's New York activities.

performed for the company amounted to more than the mere solicitation of business.

We hold that the evidence here shows that the cumulative activities of Overnite in New York met the test of "doing business" in that State under New York law. It was thus amenable to service of process in New York and the judgment entered by the Civil Court of the City of New York was valid.

We do not agree with the trial court that the maintenance of Golding's action in New York was offensive to "traditional notions of fair play and substantial justice." The New York standards for personal jurisdiction over nonresidents under § 301 (CPLR) are more restrictive than the *International Shoe* standard of "minimum contacts."

We are not unmindful of the inconvenience that is caused when a company is subjected to litigation in a foreign jurisdiction, but as the New York Court of Appeals said in *Frummer* v. *Hilton Hotels International, Inc., supra,* 19 N.Y.2d at 538, 227 N.E.2d at 854, 281 N.Y.S.2d at 45, "it is part of the price which may properly be demanded of those who extensively engage" in doing business in New York State. *See also Gelfand* v. *Tanner Motor Tours, Ltd.,* 385 F.2d 116, 120-21 (2d Cir.), *cert. denied* 390 U.S. 996 (1967).

Since the New York judgment is valid and thus entitled to full faith and credit, the judgment of the court below is reversed and the case remanded for the entry of judgment for Golding.

*Reversed and remanded.*