BANK OF UTICA, Respondent, v DOROTHY WORMUTH, Appellant.

Fourth Department, July 12, 1977

*John C. Hinkle* for appellant.

*Kehow, Murnane & Garramone (Anthony J. Garramone* of counsel), for respondent.

DILLON, J. Defendant resides in Delaware County. On November 15, 1972 she signed a contract with Onondaga Suburban Foods, Inc. for the purchase of a freezer for $549.95; a "food service policy" for $399.95; and a food order for $300.10. With finance and other contract charges, the total amount to be paid in monthly installments over a three-year period was $1,683.72. The "food service policy" is undefined and unexplained in this record. Onondaga Suburban Foods, Inc. assigned the contract to plaintiff on November 22, 1972.

The record is unclear as to whether the defendant paid in full for the food order, but in any event, she made only two payments on the installment contract. Upon her default, the freezer was repossessed and sold at auction. The record provides no details as to that sale.

On August 28, 1973 a summons with notice, without a complaint, was served upon defendant. The summons placed venue in Oneida County, the plaintiff's place of business, and

the notice stated that upon defendant's default, judgment would be taken in the sum of $1,326.88. Defendant failed to appear in the action and a default judgment was entered in the Oneida County Clerk's office on November 7, 1973. One week later a transcript of the judgment was filed in Delaware County and a copy of the judgment was received by the defendant on December 27, 1973. Plaintiff issued an income execution on November 2, 1974 and commencing the following month, 10% of defendant's weekly earnings was withheld from her wages and paid to plaintiff.

After first consulting another lawyer, since suspended from the practice of law, defendant retained her present counsel in April, 1976 and shortly thereafter he moved (1) to vacate the default judgment; (2) for refund of contract payments made by the defendant; and (3) to enjoin further collection by way of the income execution. Defendant appeals from Special Term's denial of that motion, claiming that the default judgment should be vacated because it was entered in violation of the relevant CPLR provisions of the Consumer Credit Act which became effective September 1, 1973.

The Consumer Credit Act now requires that a summons in an action arising out of a consumer credit transaction, such as we see here, shall prominently display thereon the words "consumer credit transaction" and shall specify the defendant's county of residence and the county where the transaction took place (CPLR 305, subd [a]). It is further required that the place of trial shall be the county of the residence of the defendant or the county where the transaction took place (CPLR 503, subd [f]).

These statutes were enacted in response to widespread abuse in actions brought against purchasers, borrowers or debtors arising out of consumer credit transactions. Frequently, as in the case at bar, venue was placed in a county far removed from the defendant's residence, making it cumbersome and expensive for such individuals to defend those actions or to contest venue (see Governor's Memorandum, 1973 NY Legis Ann, p 18). The result, more often than not, was a default judgment with all of the additional expense thereof added to the original debt.

In further pursuit of the statutory scheme to limit the places where a creditor may bring suit arising out of a consumer credit transaction, CPLR 513 was added, also effective September 1, 1973, to provide that "the clerk shall not

accept a summons for filing when it appears upon its face that the proper venue is a county other than the county where such summons is offered for filing." (CPLR 513, subd [a].) Rejection of the summons, however, does not require the plaintiff to reinstitute the action by serving again a summons upon the defendant (2 Weinstein-Korn-Miller, NY Civ Prac, par 503.20). In such cases,

"service is complete ten days after such summons is filed in the proper county with proof of service upon the defendant of the summons, together with proof of service upon the defendant by registered or certified mail of a notice setting forth the following:

"1. the proper county,

"2. the date of filing of the summons,

"3. the date within which the answer or notice of appearance is to be filed, and

"4. the address at which it is to be filed." (CPLR 513, subd [c].)

Since CPLR 305 (subd [a]) did not become effective until September 1, 1973, the summons here, which was served three days earlier, could not be violative of its mandate. Thus it was not required that the nature of the transaction upon which the action was based be clearly shown on the face of the summons, nor was it necessary to show the defendant's county of residence or the locus of the sale.

In limiting the place of venue for the trial of such actions, the Legislature changed a pre-existing remedy. Formerly, a defendant in an action of this nature, seeking a change of venue to the county either of his residence or of the transaction, was required to move upon the grounds that "the convenience of material witnesses and the ends of justice will be promoted by the change" (CPLR 510, subd 3). To accomplish the same purpose, the Legislature relieved the defendant of this burden and imposed it upon the plaintiff by requiring that the summons be filed in a proper county and that the defendant be served with an appropriate notice (CPLR 513, subd [c]).

While the date of the filing of the summons here does not appear in the record, the defendant concedes on appeal that the clerk of Oneida County could not have refused, on the basis of CPLR 513 (subd [b]), to accept the summons for filing, because it did not appear on its face that the action arose out

of a consumer credit transaction. Although not alleging willful fraud on the part of plaintiff's attorneys, defendant asserts that the attorneys were obligated to tell the clerk the nature of the action and thus cause the rejection of the filing of the summons. Even if the clerk were so instructed, however, he would not have had authority under CPLR 513 to refuse to file it. Nor could plaintiff's counsel add words to the face of the summons after a copy had been served upon defendant in order to make it conform to the provisions of CPLR 305 (subd [a]).

While we agree with defendant's contention that the relevant statutes are essentially procedural and remedial and thus, absent a contrary legislative intent, apply "to procedural steps in pending actions" (Shielcrawt v Moffett, 294 NY 180, 188), it is equally true that "steps already taken, including pleadings, and all things done under the old law continue effective. (2 Sutherland, Statutory Construction [Sands 4th ed], § 41.04, p 253.) A procedural change is generally inapplicable "where the effect is to reach backward, and nullify by relation the things already done [citations omitted]. There can be no presumption, for illustration, that a statute regulating the form of pleadings * * * is intended to invalidate pleadings already served" (Matter of Berkovitz v Arbib & Houlberg, 230 NY 261, 270). Although procedural changes are applicable to subsequent proceedings in pending actions, it takes a clear expression of legislative purpose to justify "a retrospective application of even a procedural statute so as to affect proceedings previously taken in such actions" (Simonson v International Bank, 14 NY2d 281, 289).

Applying these principles to the case at bar, we find no such expression of legislative intent in the CPLR and we further find that to require the plaintiff to have complied with the provisions of CPLR 513 (subd [c]) would be "to reach backward, and nullify * * * things already done" (Matter of Berkovitz v Arbib & Houlberg, supra, p 270). Service of the summons personally upon the defendant was complete when made on August 28, 1973. Nothing further was required to achieve jurisdiction in the action. Application of subsequently enacted CPLR 513 (subd [c]) would affect a proceeding "previously taken" in this action in that it would render service incomplete nunc pro tunc and require that further steps be taken by plaintiff to effectuate a form of service not mandated when the action was brought. Thus, in the circumstances of this case,

186

we are constrained to hold that the default judgment, having been lawfully entered, should not be vacated.

In reaching this determination, however, we note that upon all of the facts available to us in the record, it appears that this is precisely the kind of case which demonstrates the wisdom of the Consumer Credit Act. The defendant is now required to pay sums of money far in excess of any value she received from her contract. We can only speculate that such a result may well be avoided in the future when borrowers, purchasers and debtors have more convenient access to the court of venue.

The order must be affirmed.

SIMONS, J. P., HANCOCK, DENMAN and GOLDMAN, JJ., concur.

Order unanimously affirmed, without costs.