■ MARY R. STEWART, Respondent, v LLOYD T. STEWART, Appellant.— In an action to enforce the provisions of a separation agreement, the defendant appeals from an order of the Supreme Court, Nassau County, dated May 10, 1979, which (1) denied his motion to vacate a default judgment for alimony arrears under a separation agreement, and (2) granted the plaintiff's cross motion to set the matter down for an assessment of damages. Order affirmed, with $50 costs and disbursements. On July 21, 1961, after more than 12 years of marriage, the parties herein entered into a separation agreement which, by its terms, survived the divorce later obtained by the plaintiff. The agreement provided that the defendant would pay alimony calculated upon a percentage of his gross income, the percentage to be dependent upon whether the plaintiff was employed. To protect the plaintiff's interests, the agreement further provided that she would have "the right on reasonable notice to examine any income tax return hereafter filed by the [defendant]." Beginning in November, 1977 the plaintiff sought to enforce this right in order to insure that she was receiving all amounts due her. Accordingly, she wrote to the defendant, who was residing in Maryland, and requested that he provide her with

copies of his income tax returns for the years 1971 through 1977. A series of communications then followed between plaintiff's attorney and defendant's Maryland counsel. Repeated requests for the tax returns were met with unfulfilled assurances that they would be forthcoming. Thereafter, the defendant proposed a modification of the agreement but the plaintiff insisted upon an examination of the defendant's tax returns before any modification would be considered. Finally, on July 7, 1978, having received none of the requested tax returns, plaintiff commenced the instant action by causing a summons and complaint to be served personally on the defendant in Maryland. The relief sought in the complaint was the production of the defendant's Federal income tax returns for the years 1971 through 1977, an injunction prohibiting the defendant from refusing to produce returns thereafter, and a money judgment for such arrears as might be revealed by an examination of the returns requested. The defendant filed no answer. Instead, his Maryland counsel sent a letter explaining that he had been unable to file an answer because it had been necessary for him to engage and consult with a New York attorney. Plaintiff agreed to an extension to August 14, 1978, upon a promise that certain tax information would be forwarded. On August 14, defendant's counsel wrote that he had been unable to provide the tax information, and he requested a further extension of two months. Plaintiff agreed on condition that the tax information be provided immediately. The information was thereafter provided by letter dated August 31, 1978. Subsequently, in a letter dated September 29, 1978, plaintiff's attorney proposed a settlement involving a reduction in the percentage of defendant's income to be paid as alimony. This modification was to take effect only after outstanding arrears had been paid. Counsel wrote further: "It has been many months since we first corresponded about this matter, and I feel that I must proceed with the litigation expeditiously, if settlement cannot be worked out." Counsel cautioned that, in the absence of a settlement, defendant's answer would be expected no later than October 16, 1978. Upon receiving no response by that date, plaintiff initiated default proceedings by mailing a copy of the summons to the defendant pursuant to CPLR 308. When defendant's counsel finally replied, he rejected the proposed settlement asking instead for a further extension to file an answer. Plaintiff's attorney refused the request and indicated that he would pursue a default judgment expeditiously. On November 3, 1978 defendant's attorney again requested that no further steps be taken toward a default judgment because he was "in the process of engaging counsel in New York to contest the suit". This request was also refused and on November 7, 1978, plaintiff obtained a default judgment in the sum of $74,213. Thereafter, defendant's motion to vacate the judgment was granted on the procedural ground that the clerk of the court had exceeded his authority by computing the award based upon figures supplied by plaintiff's counsel which did not appear in the complaint. However, on the papers before it, the court declined to vacate the default directing instead that within 10 days defendant move specifically for that relief and provide a detailed affidavit of merits together with a proposed answer. The defendant complied with this direction and plaintiff cross-moved for an assessment of damages. Special Term thereupon denied defendant's motion to vacate the default and granted the cross motion setting the matter down for a determination of damages. The defendant now appeals. We affirm. In our view, Special Term correctly concluded that the record demonstrated no mistake, inadvertence, surprise or excusable neglect sufficient to warrant vacatur of the default. The defendant was repeatedly given extensions but filed no answer. Instead,

from the outset, he engaged in a deliberate attempt to frustrate plaintiff's right to examine his tax returns. The assertion that the delay was occasioned by the defendant's efforts to secure local counsel is disingenuous. On two separate occasions, the first more than two months prior to the initiation of default proceedings, the defendant represented that he was in the process of seeking New York counsel. Indeed, the defendant failed to act promptly even after he had received notice that plaintiff intended to proceed expeditiously for the default judgment. Moreover, the defenses belatedly asserted by the defendant are without merit and only one even warrants discussion. The defendant contends that Special Term lacked in personam jurisdiction and therefore was without power to enter the judgment. This argument rests on a paragraph of the separation agreement which provided: "This agreement shall be governed and construed in accordance with the laws of the State of New York in force at the date of the execution of this agreement." The defendant maintains that, when the agreement was signed, the law of New York did not provide for in personam jurisdiction over a nondomiciliary in circumstances such as those at bar. He argues further that since no provision comparable to New York's present long-arm statute was in force at the time the separation agreement was executed, plaintiff's reliance on CPLR 302 (subd [a], par 1) is misplaced. We disagree. The paragraph in question provides that "This agreement" shall be governed in accordance with New York law as it existed at the time the agreement was executed. The agreement itself contains no provision relating to the manner in which an action thereon might be commenced. Hence it was plainly the intention of the parties that the law in effect at the time of the execution of the agreement would control its substantive provisions. CPLR 302, therefore, applied to the case at bar, and Special Term did indeed have in personam jurisdiction over the defendant. (Cf. *Simonson v International Bank,* 14 NY2d 281.) Mollen, P. J., Hopkins, Lazer and O'Connor, JJ., concur.