**JN REALTY LLC, Plaintiff,**

v.

**The ESTATE OF Wilbur MARVIN, The Wilbur Marvin Foundation, CPDC PR LLC and The Baton Rouge Area Foundation, Defendants.**

No. 02CV3860(ADS)(ARL).

United States District Court, E.D. New York.

June 21, 2003.

Alston & Bird, LLP, by Karl Geercken and Torsten M. Kracht, Of Counsel, New York City, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff JN Realty LLC ("JN Realty" or the "plaintiff") brings this action against the defendants The Estate of Wilbur Marvin (the "Marvin Estate"), the Wilbur Marvin Foundation ("WMF"), CPDC PR LLC ("CPDC") and the Baton Rouge Area Foundation ("BRAF") alleging that Wilbur Marvin ("Marvin") conducted unauthorized transfers of his interest in a New York Partnership to CDPC and WMF. WMF and BRAF now move to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Rule 12(b)(2)").

## I. BACKGROUND

The facts are taken from the complaint unless otherwise noted. JN Realty is a Delaware corporation with its principal place of business in Hicksville, New York. The Marvin Estate is presently in probate court in Louisiana. WMF is a Louisiana not-for-profit corporation with its principal place of business in Baton Rouge, Louisiana. CPDC is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana. BRAF is a Louisiana not-for-profit corporation with its principal place of business in Baton Rouge, Louisiana.

On or about December 9, 1971, Marvin, as general partner, and Joseph Norban, Alex Grant ("Grant"), Abraham Norban, Murray Sprecher ("Sprecher"), George Nodelman ("Nodelman"), Marvin Adams ("Adams") and Joetta Norban, as limited

Rivkin Radler, LLP, by William M. Savino, Pia E. Riverso, and Chris J. Fichtl, Of Counsel, Uniondale, NY, for Plaintiff.

partners, executed an agreement (the "Agreement") which formed a limited partnership under Article 8 of the New York State Partnership Law under the name "Bayamon, P.R. Commercial Properties Development Company" ("Bayamon"). These individuals formed the partnership to engage in the construction, ownership and operation of a shopping center known as the Bayamon–Oeste Shopping Center in the City of Bayamon, Commonwealth of Puerto Rico (the "Shopping Center"). Under the Agreement, Marvin owned 50% interest in Bayamon.

On or about July 29, 1983, the parties amended the Agreement to reflect the death of Joseph Norban and to memorialize certain unspecified agreements. Thereafter, the members of the "Norban group" conveyed their limited partnership interest in Bayamon to JN Realty. Due to this transfer, JN Realty became a limited partner in Bayamon owning a 50% interest in the partnership.

In or about 1997, Marvin transferred 1% of his general partnership interest in Bayamon to CDPC (the "CDPC Transfer") and transferred the remaining 49% of his partnership interest in Bayamon to WMF as a limited partner (the "WMF Transfer"). The complaint alleges that these transfers violated the Agreement and were done without the consent of JN Realty and the other limited partners.

In or about April 2000, Marvin died. Sometime thereafter, Ben Miller, Jr., Esq. ("Miller") who was Marvin's attorney, requested that JN Realty execute a document that would authorize the transfer of Marvin's interests in Bayamon to CDPC and WMF. JN Realty declined to consent to this request.

On July 3, 2002, JN Realty commenced this action against the defendants in the Eastern District of New York. The complaint alleges nine causes of action. The first claim seeks a declaratory judgment that the CDPC Transfer was done without authorization; that it breached the Agreement and the applicable provisions of the New York Limited Partnership Act; and that Marvin remained the general partner of Bayamon, at all relevant times. The second, third, fifth and seventh claims seek a declaratory judgment that Bayamon is dissolved and request injunctive relief preventing the defendants from disposing of any of Bayamon's assets; directing that all of the property, rights and assets of Bayamon be sold; directing the defendants to account as to their affairs of Bayamon; and directing that the proceeds of Bayamon's assets be divided between the parties in this action. The fourth claim seeks damages against the Marvin Estate due to the CDPC transfer. The sixth claim seeks damages against CDPC for its improper and unauthorized operation of Bayamon. The eighth claim seeks damages against the defendants for allegedly wasting and mismanaging Bayamon's assets by failing to provide necessary repairs to the Shopping Center; paying excessive fees to themselves and their affiliates in violation of the Agreement; and failing to provide accurate and timely financial information to JN Realty in violation of the Agreement and the applicable law. The ninth claim seeks damages against the defendants for breach of fiduciary duty.

On October 1, 2002, the Marvin Estate and CPDC filed a joint answer to the complaint. WMF and BRAF now move to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2).

## II.  DISCUSSION

### A.  The Standard

In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists over the defendant. *Distefano v. Carozzi North Am., Inc.*, 286

F.3d 81, 84 (2d Cir.2001). The plaintiff's burden depends on the posture of the case. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). Without extensive discovery or an evidentiary hearing, as here, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists over the defendant. *Id.* At this early stage, a court must construe all pleadings and affidavits in the light most favorable to the plaintiff and any doubt must be resolved in the plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985) (citations omitted).

■ In this diversity case, a court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir.2001). As such, the Court must look to New York's personal jurisdiction statutes, CPLR § 301 ("Section 301") and CPLR § 302 ("Section 302"), to determine whether JN Realty has made a *prima facie* showing of personal jurisdiction over WMF and BRAF. If there is jurisdiction under the CPLR, then the Court evaluates whether the exercise of that jurisdiction comports with due process requirements.

### 1. General Jurisdiction

■ Section 301 allows general jurisdiction over a foreign corporation where it is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith,* 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (N.Y.1981) (citing *Simonson v. Int'l Bank,* 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 200 N.E.2d 427 (N.Y.1964)) "The court must be able to say from the facts that the corporation is 'present' in the State, 'not occasionally or casually, but

with a fair measure of permanence and continuity.'" *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 77 N.Y.2d 28, 33–34, 563 N.Y.S.2d 739, 565 N.E.2d 488 (N.Y.1990) (citations omitted). In deciding whether general jurisdiction exists, courts have traditionally looked to the following factors: "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts and other property in New York; and the presence of employees or agents in New York." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990).

Here, WMF and BRAF do *not* have a New York Office; do *not* solicit business in New York; do *not* have a bank account or property in New York; and do *not* have employees or agents in New York. Accordingly, the Court does not have general jurisdiction over WMF and BRAF pursuant to Section 301.

### 2. Long–Arm Jurisdiction

#### a. Section 302(a)(1)

■ JN Realty argues that WMF is a general partner in Bayamon which transacts business in New York and is therefore subject to jurisdiction under Section 302(a)(1). In support of this contention, JN Realty relies on *Friedson v. Lesnick,* No. 91CV2133, 1992 WL 51543 (S.D.N.Y. Mar.9, 1992). This argument is without merit.

In *Friedson,* United States District Judge John S. Martin, Jr. of the Southern District of New York held that "courts have personal jurisdiction over general partners if the court has jurisdiction over the partnership itself, and the lawsuit arises out of partnership affairs." *Id.* at *2 (citing *Wichita Fed. Savings & Loan Ass'n v. Comark,* 586 F.Supp. 940, 943–44 (S.D.N.Y.1984)). In that regard, Judge Martin reasoned that "each general partner acts as the agent of every other gener-

al partner and the partnership, and if an agent transacts business within the state the court has jurisdiction over the principal." *Id.* (citations omitted).

Here, WMF is not a general partner in Bayamon. Rather, WMF is a limited partner. *See* Complaint ¶ 28 ("In or about 1996 or 1997, Wilbur Martin ... transferred the other forty-nine (49%) percent of his partnership interest to The Wilbur Marvin Foundation ... as a limited partner."); *see also* Supplemental Declaration of Ben Miller, Jr. dated November 18, 2002 ¶ 4–15 (explaining that WMF is a limited partner in Bayamon, not a general partner). Unlike a general partner, WMF's status as a limited partner does not, in and of itself, create long-arm jurisdiction. *See Friedson*, 1992 WL 51543, at *3 ("[U]nlike the case of a general partner, this status [limited partner in a partnership] does not in and of itself give the court long-arm jurisdiction over [defendant], because '[t]he principal-agent relationship which exists between the partners of an ordinary partnership is not present between the limited and general partners of a limited partnership.' ") (quoting *Lynn v. Cohen*, 359 F.Supp. 565, 567 (S.D.N.Y. 1973)).

■ Although JN Realty relies solely on its unfounded argument that Section 302(a)(1) is satisfied because WMF is a general partner in Bayamon, the Court will analyze the affidavits and pleadings to determine whether either of the two elements of that section are met. Jurisdiction exists under Section 302(a)(1) if (a) the defendant has transacted business within the state; and (b) the claim arises out of that activity. *See Bank Brussels*, 171 F.3d at 787. "Transacting business" requires only a minimal quantity of activity, provided that it is of the right nature and quality and, in making a determination, a court must analyze the totality of the defendant's contact with the forum. *Agency*

*Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir.1996). "[A] single transaction would be sufficient to fulfill this requirement." *Bank Brussels,* 171 F.3d at 787 (internal quotation marks and citation omitted).

■ Once the plaintiff shows that the defendant transacted business in the state, she must establish that her claims are "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York." *Hoffritz for Cutlery,* 763 F.2d at 59. The plaintiff must show "some articulable nexus between the business transacted and the cause of action sued upon." *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983) (internal quotation marks and citations omitted).

### i. WMF

■ The complaint is devoid of any allegations that WMF transacted any business in New York. However, the two affidavits which JN Realty submits in opposition to the instant motion set forth facts that WMF transacted certain business in New York: affidavit of Joel Handel, Esq. dated November 1, 2002 (the "Handel Affidavit") and affidavit of Linda Lane dated November 1, 2002 (the "Lane Affidavit"). In his affidavit, Handel states that he represents the principal partner in JN Realty and over the years has represented the Norban family in connection with their partnership interest in Bayamon. The Handel Affidavit states that Miller, as President of WMF, made telephone calls to him in New York regarding matters relating to the distributions stemming from or financing of the Shopping Center; that Miller and John G. Davies ("Davies"), on behalf of WMF and BRAF, met at Handel's office in New York to negotiate WMF's purchase of JN Realty's interest in Bayamon but a deal was never completed.

In her affidavit, Lane states that she is the executrix of the Estate of Joetta Norban, the principal partner in JN Realty. The Lane Affidavit states that after Marvin's death, Miller wrote numerous letters to Bayamon partners in New York in connection with partnership issues; that on November 1, 2002, Miller traveled to New York for a meeting between WMF, BRAF, JN Realty and others to negotiate WMF and BRAF's purchase of JN Realty's interest in Bayamon; that Miller exchanged numerous correspondence with Handel in connection with the sale of JN Realty's interest in Bayamon; that on May 6, 2002, Miller returned to New York to discuss principally the partnership affairs and to introduce JN Realty to the new property manager for the Shopping Center; and that Miller sent a letter to JN Realty's counsel in New York dated July 12, 2002 seeking JN Realty's consent regarding Marvin's previous transfer in Bayamon to WMF.

Viewing the affidavits and the pleadings in the light most favorable to JN Realty, the Court finds that JN Realty has established, *prima facie,* that WMF transacted business in New York. The Handel and Lane affidavits demonstrate that Miller, WMF's President, had numerous contacts-via telephone, correspondence and in person meetings—with representatives of JN Realty in New York. *See PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir.1997) (noting that the defendant's frequent telephone calls and letters to the plaintiff located in New York over a couple of months constituted transacting business there). In addition, the Agreement, which WMF is a limited partner, contains a choice of law provision that provides for New York law to govern disputes between the partners. *See CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 366–67 (2d Cir. 1986) (finding that the existence of a New York choice of law provision in a contract is "some weight" that a defendant trans-

acted business there). As such, the first element is satisfied.

■ As to the second element, the Court finds that JN Realty has established *prima facie* that its claims are sufficiently related to WMF's business transactions in New York. The complaint alleges claims arising out of: (1) Marvin's transfer of his interest in Bayamon to CDPC; (2) Marvin's transfer of his interest in Bayamon to WMF; and (3) the defendants alleged mismanagement of Bayamon's assets by failing to provide necessary repairs to the Shopping Center, paying excessive fees to themselves and their affiliates, and failing to provide accurate and timely financial information to JN Realty. Much of WMF's business activities in New York relates to the affairs of Bayamon which, in turn, sufficiently relates to JN Realty's claim that the defendants' mismanaged Bayamon's assets. As such, the second element is satisfied.

Finally, the exercise of personal jurisdiction under Section 302 comports with the Due Process Clause of the United States Constitution because—by virtue of its business activities in New York—WMF "purposefully avail[ed] [itself] of the privilege of conducting activities" such that it should reasonably anticipate being haled into Court here. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). WMF is an owner in a New York Partnership. That partnership contains a New York choice of law provision. WMF's President made numerous telephone calls to New York, sent correspondence and attended meetings there in connection with the partnership. Further, the complaint here is based on the activities of the partnership. As such, the exercise of jurisdiction over WMF comports with "our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 324, 66 S.Ct. 154, 162, 90 L.Ed.

95 (1945). Accordingly, the motion to dismiss the complaint for lack of personal jurisdiction against WMF is denied.

### ii. BRAF

■ The complaint does not contain any allegations that BRAF transacted business in New York. Although the Handel and Lane Affidavits state that a representative of BRAF was present to negotiate the purchase of JN Realty's interest in Bayamon, this sale never took place. Also, the sale of JN Realty's interest in Bayamon has no connection to the claims in the complaint. As such, the Court finds that there is no articulable nexus between BRAF"s purported contacts in New York and JN Realty's claims. In addition, the Court finds that the exercise of personal jurisdiction over BRAF would not comport with the Due Process Clause of the United States Constitution. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. In particular, BRAF had no reason to anticipate being sued in New York for the claims alleged in the complaint because it does not own any interest in Bayamon. Finally, the allegations in the complaint that WMF and BRAF are the same entity is a legal conclusion without any factual basis. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir.1998) (refusing to accept the plaintiffs' conclusory allegations that a subsidiary was an agent of its parent). Accordingly, the motion to dismiss the complaint against BRAF for lack of personal jurisdiction is granted.

Because the Court finds that JN Realty has satisfied its burden concerning personal jurisdiction over WMF and that exercising personal jurisdiction over BRAF would offend due process principles, the Court need not address JN Realty's alternative jurisdiction argument under Section 302(a)(3)(ii).

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motion to dismiss the complaint against the Wilbur Marvin Foundation for lack of personal jurisdiction pursuant to Rule 12(b)(2) is **DENIED;** and it is further

**ORDERED,** that the motion to dismiss the complaint against the Baton Rouge Area Foundation for lack of personal jurisdiction is **GRANTED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption as follows:

and it is further

**ORDERED,** that the parties are directed to contact United States Judge Arlene R. Lindsay forthwith to schedule the completion of discovery.

**SO ORDERED.**