Aybar v Aybar (2019 NY Slip Op 00412)





Aybar v Aybar


2019 NY Slip Op 00412


Decided on January 23, 2019


Appellate Division, Second Department


Brathwaite Nelson, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 23, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
SANDRA L. SGROI
HECTOR D. LASALLE
VALERIE BRATHWAITE NELSON, JJ.


2016-06194
2016-07397
 (Index No. 706909/15)

[*1]Anna Aybar, et al., plaintiffs-respondents, 
v
Jose A. Aybar, Jr., et al., defendants, Ford Motor Company, et al., appellants; U.S. Tires and Wheels of Queens, LLC, nonparty-respondent.



APPEAL by the defendant Ford Motor Company, in an action to recover damages for personal injuries and wrongful death, from an order of the Supreme Court (Thomas D. Raffaele, J.), entered May 31, 2016, in Queens County, and SEPARATE APPEAL by the defendant Goodyear Tire & Rubber Co. from an order of the same court, also entered May 31, 2016. The first order denied the motion of the defendant Ford Motor Company pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against it for lack of personal jurisdiction. The second order denied the motion of the defendant Goodyear Tire & Rubber Co., pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against it for lack of personal jurisdiction.



Aaronson Rappaport Feinstein & Deutsch, LLP (Eliot J. Zucker, Peter J. Fazio, and Hogan Lovells US LLP, New York, NY [Sean Marotta], of counsel), for appellant Ford Motor Company, and DLA Piper LLP, New York, NY (Kevin W. Rethore of counsel), for appellant Goodyear Tire & Rubber Co. (one brief filed).
Omrani & Taub, P.C. (Parker Waichman, LLP, Port Washington, NY [Jay L. T. Breakstone and Jessica L. Richman], of counsel), for plaintiffs-respondents.
Marshall Dennehey Warner Coleman & Goggin, P.C., New York, NY (Adam C. Calvert of counsel), for nonparty-respondent.



BRATHWAITE NELSON, J.


We consider on these appeals whether, following the United States Supreme Court decision in Daimler AG v Bauman (571 US 117), a foreign corporation may still be deemed to have consented [*2]to the general jurisdiction of New York courts by virtue of having registered to do business in New York and appointed a local agent for the service of process. We conclude that it may not.
I.
This action arises from a July 1, 2012, automobile accident that occurred on an interstate highway in Virginia. The defendant Jose A. Aybar, Jr., a New York resident, was operating a 2002 Ford Explorer that was registered in New York when one of its tires allegedly failed, causing the vehicle to become unstable and overturn and roll multiple times. Three of the six passengers died as a result of the accident and the other three were injured. The plaintiffs are the surviving passengers and the representatives of the deceased passengers' estates. They allege, among other things, that the defendant Ford Motor Company (hereinafter Ford) negligently manufactured and designed the Ford Explorer, and that the defendant Goodyear Tire & Rubber Co. (hereinafter Goodyear) negligently manufactured and designed the faulty tire.
Ford is incorporated in Delaware, with its principal place of business in Michigan, and Goodyear is incorporated in, and has its principal place of business in, Ohio. The complaint alleges that at all relevant times both corporations were registered to do business in New York, and that each, in fact, conducted business in New York and derived substantial revenue from such business.
Ford moved pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against it on the ground that the Supreme Court lacked personal jurisdiction over it. In support of its motion, Ford submitted evidence that the subject vehicle was manufactured in Missouri and sold to a dealership in Ohio in March 2002, from where it was sold to an individual not involved in this lawsuit, and that the vehicle was not designed in New York. Ford also submitted evidence that it did not have any Ford Explorer manufacturing plants in New York, and it did not directly engage in the servicing of Ford vehicles in New York, which is done exclusively by independent dealers. Aybar purchased the subject vehicle and tire in 2011 from a third party in New York.
In opposition to the motion, the plaintiffs argued that Ford was subject to general jurisdiction in New York because Ford maintained a substantial and continuous presence in New York. To support this proposition, the plaintiffs pointed to "hundreds" of Ford dealerships employing numerous New York residents, and they submitted evidence that Ford operated a stamping (manufacturing) plant in Hamburg, New York, which employed approximately 600 people and for which Ford had received incentive packages and tax credits from New York State. In reply, Ford submitted evidence that it had 62 plants and franchise agreements with 11,980 dealerships worldwide, and argued that its economic contacts with New York were not so substantial as compared to its contacts elsewhere so as to render Ford "at home" in New York.
Goodyear also moved pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against it on the ground of lack of personal jurisdiction. In support of its motion, Goodyear submitted evidence that the subject tire was designed in Ohio, manufactured in Tennessee in 2002, and tested and inspected outside of New York. Goodyear asserted that it had no way of tracking the sale or ownership of a given tire over its service life, but could identify that the subject class of tire was sold as original equipment for certain Isuzu and Ford vehicles, and as a replacement tire. Goodyear additionally submitted evidence that it operated a chemical plant in New York and that it was a member of a limited liability company which owned and operated a tire manufacturing plant in New York, but that neither plant manufactured the subject tire, and that Goodyear did not specifically direct advertising of the subject tire at New York residents.
In opposition to Goodyear's motion, the plaintiffs argued that Goodyear was subject to general jurisdiction in New York because its business affiliations within New York were so pervasive or continuous and systematic as to render it essentially "at home" in New York State. The plaintiffs submitted evidence that Goodyear had numerous tire and auto service center storefront locations in New York, from which the plaintiffs argued it could be inferred that Goodyear employed hundreds, possibly thousands, of New York residents. In reply, Goodyear submitted evidence that it had plants, service centers, and other properties worldwide. It argued that it employed "a [*3]tremendous number of people" worldwide, and that its economic contacts with New York were not so substantial as compared with its contacts elsewhere so as to render Goodyear "at home" in New York.
Nonparty U.S. Tires and Wheels of Queens, LLC (hereinafter U.S. Tires), was a defendant in a separate action brought by the plaintiffs arising from the same accident. At the time of the motions to dismiss of Ford and Goodyear, there was a pending motion to consolidate the two actions. U.S. Tires submitted opposition papers to the subject motions, and argued that both Ford and Goodyear had consented to general jurisdiction in New York by registering to do business with the New York Secretary of State and designating an agent for service of process in New York. U.S. Tires noted that it was a New York corporation with its principal place of business in New York, and, thus, if Ford and Goodyear were to succeed on their motions, the result would be three separate lawsuits, all involving the same accident, which, U.S. Tires contended, would likely result in inconsistent verdicts, duplication of discovery, and waste of judicial resources.
In response to U.S. Tires's opposition, Ford argued that the opposition was untimely, U.S. Tires lacked standing to oppose the motion, and, on the merits, Ford's compulsory registration to do business in New York and appointment of the Secretary of State as its agent for service of process did not constitute consent to general jurisdiction in New York. Goodyear advanced similar arguments in response to U.S. Tires's opposition.
In separate orders, each entered May 31, 2016, the Supreme Court, Queens County (hereinafter the motion court), denied the motions, concluding that Ford and Goodyear were each subject to general jurisdiction in New York. The motion court found that the activities of both Ford and Goodyear in New York were so continuous and systematic that both Ford and Goodyear are essentially at home here. The motion court also found that both Ford and Goodyear had otherwise consented to general jurisdiction in New York by each registering to do business in New York as a foreign corporation and designating a local agent for service of process. With regard to Ford's activities in New York, the motion court pointed to the facts that Aybar purchased the vehicle in New York and primarily used it in New York, Ford has an organization of facilities in New York engaged in day-to-day activities, and Ford has many franchises across New York. With regard to Goodyear, the motion court relied upon the facts that Goodyear had operated numerous stores in New York since approximately 1924 and had employed thousands of workers in those stores, and it has an organization of facilities in New York engaged in day-to-day activities. Ford and Goodyear appeal.[FN1]
II.
It is fundamental that a court must acquire personal jurisdiction over a defendant before it can render a judgment against that defendant (see Burnham v Superior Court of Cal., County of Marin, 495 US 604, 608; Insurance Corp. of Ireland v Compagnie des Bauxites de Guinee, 456 US 694, 702). A defendant may consent to a court's exercise of personal jurisdiction (see National Equipment Rental, Ltd. v Szukhent, 375 US 311, 316), or waive the right to object to it (see CPLR 3211[e]; Insurance Corp. of Ireland v Compagnie des Bauxites de Guinee, 456 US at 703; Iacovangelo v Shepherd, 5 NY3d 184, 186), but when a defendant has objected to the court's exercise of personal jurisdiction, the plaintiff bears the burden of coming forward with sufficient evidence to prove jurisdiction (see Fischbarg v Doucet, 9 NY3d 375, 381 n 5; Mejia-Haffner v Killington, Ltd., 119 AD3d 912, 914).
Under modern jurisprudence, a court may assert general all-purpose jurisdiction or specific conduct-linked jurisdiction over a particular defendant (see Daimler AG v Bauman, 571 US at 122; Goodyear Dunlop Tires Operations, S. A. v Brown, 564 US 915). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State" (Bristol-Myers Squibb Co. v Superior Court of Cal., San Francisco County, _____ US _____, 137 S Ct 1773, 1780; see Goodyear Dunlop Tires Operations, S. A. v Brown, 564 [*4]US at 919). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation" (Goodyear Dunlop Tires Operations, S. A. v Brown, 564 US at 919 [internal quotation marks and brackets omitted]; see Bristol-Myers Squibb Co. v Superior Court of Cal., San Francisco County, _____ US _____, 137 S Ct at 1780; Daimler AG v Bauman, 571 US at 127).
Here, in opposing the motions of Ford and Goodyear, the plaintiffs asserted that New York courts have general jurisdiction over each defendant. The plaintiffs did not assert that the court could exercise specific jurisdiction over these defendants in this action, and, thus, we do not consider whether jurisdiction might be exercised over them pursuant to New York's long-arm jurisdiction statute [FN2] (see CPLR 302).
General jurisdiction in New York is provided for in CPLR 301, which allows a court to exercise "such jurisdiction over persons, property, or status as might have been exercised heretofore." Prior to the United State Supreme Court's decision in Daimler AG v Bauman (571 US 117), a foreign corporation was amenable to suit in New York under CPLR 301 if it had engaged in "such a continuous and systematic course of doing business' here that a finding of its presence' in this jurisdiction [was] warranted" (Landoil Resources. Corp. v Alexander & Alexander Servs., 77 NY2d 28, 33, quoting Laufer v Ostrow, 55 NY2d 305, 309-310). The parties do not dispute that there is statutory authority for the exercise of general jurisdiction over Ford or Goodyear, or that the exercise of such jurisdiction would be consistent with New York law. The disagreement lies in whether the exercise of such jurisdiction would comport with the limits imposed by federal due process since Daimler.
In Goodyear Dunlop Tires Operations, S. A. v Brown, the Supreme Court addressed the distinction between general and specific jurisdiction, and stated that a court is authorized to exercise general jurisdiction over a foreign corporation when the corporation's affiliations with the state "are so continuous and systematic' as to render them essentially at home in the forum State" (564 US at 919, quoting International Shoe Co. v Washington, 326 US 310, 317). In Daimler, the Court limited the scope of general jurisdiction to that definition, and rejected a standard that would allow the exercise of general jurisdiction in every state in which a corporation is engaged in a substantial, continuous, and systematic course of business (571 US at 137). The Court instructed that, with respect to corporations, the paradigm bases for general jurisdiction are the place of incorporation and principal place of business (see id.). Although the Court did not limit the exercise of general jurisdiction to those two forums, it left open only the possibility of an "exceptional case" where a corporate defendant's operations in another state were "so substantial and of such a nature as to render the corporation at home in that State" (id. at 139 n 19; see BNSF Ry Co. v Tyrrell, _____ US _____, 137 S Ct 1549, 1558).
Neither Ford nor Goodyear is incorporated in New York or has its principal place of business here. Thus, New York courts can exercise general jurisdiction over each defendant only if the plaintiffs have established that its affiliations with New York are so continuous and systematic as to render it essentially "at home" here.
Since Daimler, the Supreme Court has reiterated that, standing alone, mere "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum State]" (BNSF Ry Co. v Tyrrell, _____ US at _____, 137 S Ct at 1559). To determine whether a foreign corporate defendant's affiliations with the state are so continuous and systematic as to render it essentially at home, Daimler advised that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts," but "instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them" (Daimler AG v Bauman, 571 US at 139 n 20; see BNSF Ry Co. v Tyrrell, _____ US at _____, 137 S Ct at 1559).
The Daimler Court suggested that Perkins v Benguet Consol. Mining Co. (342 US 437) [*5]exemplified the "exceptional case" in which a corporate defendant's operations in the forum state were so substantial and of such a nature as to render the corporation "at home" in that state (see Daimler AG v Bauman, 571 US at 129). In Perkins, the defendant was incorporated in the Philippine Islands, where it owned and operated certain mines (342 US at 439). Its operations were completely halted during the Japanese occupation of the Islands in World War II. During that interim, the president of the company, who was also the general manager and principal stockholder, returned to his home in Ohio, where he maintained an office and conducted the corporation's affairs (see id. at 447-448). The Supreme Court held that Ohio courts could exercise general jurisdiction over the corporation without offending due process (see id. at 448). The Supreme Court later noted that "Ohio was the corporation's principal, if temporary, place of business so that Ohio jurisdiction was proper even over a cause of action unrelated to the activities in the State" (Keeton v Hustler Magazine, Inc., 465 US 770, 779 n 11, see Daimler AG v Bauman, 571 US at 130).
A.
The plaintiffs argue that New York courts have general jurisdiction over Ford because Ford has "become woven into the fabric of New York state domestic activity." They point to the facts that Ford has been authorized to do business in New York since 1920, it operates numerous facilities in New York, it owns property in New York and spends at least $150 million to maintain the property, it employs significant numbers of New York residents, it contracts with hundreds of dealerships in New York to sell its products under the Ford brand name, and it has frequently been a litigant in New York courts.
Under the strictures of Daimler, Ford's contacts with New York are insufficient to permit the assertion of general jurisdiction over claims that are unrelated to any activity occurring in New York. Ford concedes that it has extensive commercial activities in New York, but it notes that it has extensive commercial activities throughout the country and worldwide. Indeed, while the plaintiffs point to Ford's one factory in New York, employing approximately 600 people, and Ford's contracts with "hundreds" of dealerships in the state, Ford presented evidence that it has 62 plants, employing about 187,000 people, and 11,980 franchise agreements with dealerships worldwide. Appraising the magnitude of Ford's activities in New York in the context of the entirety of Ford's activities worldwide, it cannot be said that Ford is at home in New York.
B.
The plaintiffs contend that Goodyear's presence in New York is special, as it has conducted business in New York for nearly a century, it has owned and operated a chemical plant here since the 1940's, as well as a tire manufacturing plant, it has availed itself of New York's courts, and it has leased and subleased real estate in New York, maintained a network of dealers and service centers, and employed thousands of people in New York since 1924. Like Ford, Goodyear concedes that it has extensive commercial activity in New York, but it points to the evidence that it has 50 manufacturing plants worldwide and it operates approximately 1,200 retail outlets for the sale of its tires worldwide. Appraising Goodyear's activities in their entirety, Goodyear also is not at home in New York such that New York courts might exercise general jurisdiction over any claim brought against it.
III.
The plaintiffs also argue that Ford and Goodyear each consented to the jurisdiction of New York courts for all purposes, including this suit, by registering to do business in New York and appointing an agent for service of process. The plaintiffs do not rely on any particular business registration statute in making this argument. Before the motion court, U.S. Tires, which raised this argument, relied only on CPLR 301. Nevertheless, as relevant to these defendants, we note that Business Corporation Law § 1301(a) provides that "[a] foreign corporation shall not do business in this state until it has been authorized to do so." Business Corporation Law § 304(b) provides, inter alia, that no foreign corporation may be authorized to do business in New York unless in its application for authority, it designates the secretary of state as the agent upon whom process against the corporation may be served. Similarly, Business Corporation Law § 1304(a)(6) requires a foreign corporation, in its application for authority to do business in New York, to designate the secretary of state as its agent upon whom process against it may be served and an address to which process received by the Secretary of State is to be mailed.
New York's business registration statutes do not expressly require consent to general [*6]jurisdiction as a cost of doing business in New York, nor do they expressly notify a foreign corporation that registering to do business here has such an effect. There has been longstanding judicial construction, however, by New York courts and federal courts interpreting New York law, that registering to do business in New York and appointing an agent for service of process constitutes consent to general jurisdiction (see e.g. Bagdon v Philadelphia & Reading Coal & Iron Co., 217 NY 432, 436-437; Doubet LLC v Trustees of Columbia Univ. in the City of N. Y., 99 AD3d 433, 434-435; Augsbury Corp. v Petrokey Corp., 97 AD2d 173, 175-176; Le Vine v Isoserve, Inc., 70 Misc 2d 747, 749 [Sup Ct, Albany County 1972]; Robfogel Mill-Andrews Corp. v Cupples Co., Mfrs., 67 Misc 2d 623, 624 [Sup Ct, Monroe County 1971]; Carlton Props. v 328 Props., 208 Misc 776 [Sup Ct, Nassau County 1955]; Devlin v Webster, 188 Misc 891 [Sup Ct, NY County 1946], affd 272 App Div 793; Rockefeller Univ. v Ligand Pharmaceuticals, 581 F Supp 2d 461, 464-467 [SD NY][listing numerous federal cases finding consent by registration]; cf. Muollo v Crestwood Vil., 155 AD2d 420, 421). We hold that in view of the evolution of in personam jurisdiction jurisprudence, and, particularly the way in which Daimler has altered that jurisprudential landscape, it cannot be said that a corporation's compliance with the existing business registration statutes constitutes consent to the general jurisdiction of New York courts, to be sued upon causes of action that have no relation to New York.[FN3]
In New York, the theory of consent by registration originates in the 1916 opinion of Judge Cardozo in Bagdon v Philadelphia & Reading Coal & Iron Co. (217 NY 432). There, the Court of Appeals held that a foreign corporation could be sued in New York upon a cause of action that had no relation to the corporation's New York activities because the corporation had consented to the jurisdiction of New York by obtaining authorization to do business here and appointing an agent for service of process in New York. Bagdon must be understood within the historical context in which it was decided.
At the time Bagdon was decided, in personam jurisdiction was still largely limited by the conceptual structure of Pennoyer v Neff (95 US 714). In Pennoyer, decided shortly after the enactment of the Fourteenth Amendment, the United States Supreme Court held that a court's jurisdiction was restricted by its territorial limits or geographic bounds (see id. at 720), and, thus, no state could exercise jurisdiction over persons or property outside of its territory (see id. at 722). "Pennoyer sharply limited the availability of in personam jurisdiction over defendants not resident in the forum State. If a nonresident defendant could not be found in a State, he could not be sued there" (Shaffer v Heitner, 433 US 186, 199). To complicate matters, under the 19th century view, a corporation could have "no legal existence" outside of its state of incorporation (Bank of Augusta v Earle, 38 US 519, 588), and, thus, could be sued only in the state of incorporation, no matter how extensive its business in another state (see Brown v Lockheed Martin Corp., 814 F3d 619, 631).
"In time, however, that strict territorial approach yielded to a less rigid understanding" (Daimler AG v Bauman, 571 US at 126). States enacted statutes requiring the appointment by foreign corporations of agents upon whom process could be served "primarily to subject them to the jurisdiction of [the] local courts in controversies growing out of transactions within the [S]tate" (Morris & Co. v Skandinavia Ins. Co., 279 US 405, 409). The business registration statutes conditioned a corporation's authority to do business in a state on its designation of an appointed agent within the state to accept service. "Pointing to the acceptance of service by an in-state agent appointed by the corporation, a state could tenably argue that the corporation had voluntarily consented to jurisdiction there and that, notwithstanding Earle, it was present' in the state because it maintained an agent there" (Brown v Lockheed Martin Corp., 814 F3d at 632). In addition, federal jurisprudence evolved such that a foreign corporation could be subject to the jurisdiction of a state's courts if the corporation was doing business within the state and service was made in the state upon [*7]some duly authorized officer or agent who was representing the corporation in its business (see St. Louis Southwestern R. Co. of Tex. v Alexander, 227 US 218, 226; Herndon-Carter Co. v James N. Norris, Son & Co., 224 US 496, 499; Peterson v Chicago, R. I. & P.R. Co., 205 US 364, 390).
Turning back to the Court of Appeals' decision in Bagdon, there, a New York resident sued a Pennsylvania corporation for an alleged breach of contract that occurred in Pennsylvania. The defendant corporation was registered to do business in New York and had appointed an agent for the service of process in New York (see Bagdon v Philadelphia & Reading Coal & Iron Co., 217 NY at 433). The defendant conceded the presence of an agent in New York, but argued that the scope of the agency of the person appointed to accept service of process in its behalf must be limited to actions which arose out of the business transacted in New York (see id. at 433-434). The Court of Appeals rejected the defendant's argument and found that the defendant could properly be sued in New York on the cause of action, even though it did not arise from the defendant's activities in New York. The Court reasoned that by obtaining a certificate from New York to do business here, the defendant had entered into a binding contract with New York. In exchange for the right to do business in New York, the defendant had filed a stipulation in the office of the secretary of state designating a person upon whom process may be served within the state (see id. at 436). The Court found that this person was a "true agent" of the defendant, and the stipulation was a "true contract" with New York (id.). The Court held that the actions in which this agent was to represent the corporation were not limited, and, as long as New York had subject matter jurisdiction over the action, service on the agent would give jurisdiction of the person (see id. at 437). The Court further explained that the agent was in the service of the corporation engaged in business in New York, and that the agent's "presence" brought the corporation within the jurisdiction of New York (id. at 439).
One year after Bagdon was decided, the Court of Appeals extended this reasoning to a corporation that apparently was unlicensed in New York, but which was doing regular business here. In Tauza v Susquehanna Coal Co., the Court held that New York courts had jurisdiction over a foreign corporation that was doing business in New York and which had been served with process through a managing agent in its New York office, and that the court's jurisdiction "[did not] fail because the cause of action sued upon [had] no relation in its origin to the business here transacted" (220 NY 259, 268). The Court stated that "[t]he essential thing is that the corporation shall have come into the state. When once it is here, it may be served; and the validity of the service is independent of the origin of the cause of action" (id. at 268-269).
Twenty-three years after Bagdon, the Supreme Court of the United States interpreted a successor New York registration statute in accordance with Bagdon, and found that the defendant had consented to be sued in the courts of New York by designating an agent in New York for the service of process (see Neirbo Co. v Bethlehem Shipbuilding Corp., 308 US 165, 174-175). The Court observed that the statute calling for such a designation was constitutional, and the designation of the agent was " a voluntary act'" (id. at 175, quoting Pennsylvania Fire Ins. Co. v Gold Issue Mining & Milling Co., 243 US 93, 96).
New York courts continued to be guided by the requirement that a defendant must be found to be "present" in the state in order to exercise jurisdiction over the defendant in accordance with federal due process (see Simonson v International Bank, 14 NY2d 281, 285). By registering to do business in New York and appointing an agent for the service of process, a foreign corporation was, in effect, consenting to be found within New York (see Pohlers v Exeter Mfg. Co., 293 NY 274, 280 ["A designation of a public officer upon whom service may be made has the same effect as a voluntary consent"]).
In 1945, the United States Supreme Court decided International Shoe Co. v State of Washington (326 US 310), which altered our in personam jurisdiction jurisprudence. International Shoe extended the analysis beyond physical presence and authorized a state court to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice'" (id. at 316, quoting Milliken v Meyer, 311 US 457, 463; see Goodyear Dunlop Tires Operations, S.A. v Brown, 564 US 915, 923). "Following International Shoe, the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of Pennoyer rest, became the central concern of the inquiry into personal jurisdiction'" (Daimler AG v Bauman, 571 US at 126, quoting Shaffer v Heitner, 433 US at 204).
After International Shoe, courts began to differentiate between general all-purpose jurisdiction and specific case-linked jurisdiction (see Goodyear Dunlop Tires Operations, S. A. v Brown, 564 US at 919). In New York, in 1962, the Legislature enacted CPLR 302 to effect specific jurisdiction, and CPLR 301 to ensure that the general jurisdiction historically exercised in New York was not thought to be limited by the enactment of CPLR 302 (see Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 301 at 7 [2010 ed]). In the interim between International Shoe and Daimler, where jurisdiction has been predicated on CPLR 301, the prevailing logic has continued to be that there is no need to establish a connection between the cause of action at issue and the foreign defendant's business activities within the State, "because the authority of the New York courts is based solely upon the fact that the defendant is engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction'" (McGowan v Smith, 52 NY2d 268, 272, quoting Simonson v International Bank, 14 NY2d at 285; accord Landoil Resources Corp. v Alexander & Alexander Servs., 77 NY2d 28, 33). Some courts have continued to find that by registering to do business in New York and designating an agent for service of process, a foreign corporation has constructively consented to general in personam jurisdiction in New York in exchange for the privilege of doing business here (see Doubet LLC v Trustees of Columbia Univ. in the City of N. Y., 99 AD3d at 434-435; Augsbury Corp. v Petrokey Corp., 97 AD2d at 175-176; Le Vine v Isoserve, Inc., 70 Misc 2d at 749; Robfogel Mill-Andrews Corp. v Cupples Co., Mfrs., 67 Misc 2d at 624; Rockefeller Univ. v Ligand Pharmaceuticals, 581 F Supp 2d at 464-467).
As discussed above, following the United States Supreme Court's decision in Daimler, personal jurisdiction cannot be asserted against a foreign corporation based solely on the corporation's continuous and systematic business activity in New York. The consent-by-registration line of cases is predicated on the reasoning that by registering to do business in New York and appointing a local agent for service of process, a foreign corporation has consented to be found in New York. Daimler made clear, however, that general jurisdiction cannot be exercised solely on such presence (see Daimler AG v Bauman, 571 US at 137-138). The Supreme Court expressly cautioned that cases such as Tauza v Susquehanna Coal Co. (220 NY 259) which uphold the exercise of general jurisdiction based on the presence of a local office, "should not attract heavy reliance today" (Daimler AG v Bauman, 571 US at 138 n 18). As other courts have observed, it appears that every state in the Union has enacted a registration statute that requires foreign corporations to register to do business and appoint an in-state agent for service of process (see Genuine Parts Co. v Cepec, 137 A3d 123, 143; Brown v Lockheed Martin Corp., 814 F3d at 640; see also Tanya J. Monestier, Registration Statutes, General Jurisdiction, and the Fallacy of Consent, 36 Cardozo L Rev 1343, 1363 n 109 [listing statutes]). We agree with those courts that asserting jurisdiction over a foreign corporation based on the mere registration and the accompanying appointment of an in-state agent by the foreign corporation, without the express consent of the foreign corporation to general jurisdiction, would be "unacceptably grasping" under Daimler (Daimler AG v Bauman, 571 US at 138).
The Court of Appeals does not appear to have cited to Bagdon or relied upon its consent-by-registration theory since International Shoe was decided. We think that this is a strong indicator that its rationale is confined to that era, which was dominated by Pennoyer's territorial thinking, and that it no longer holds in the post-Daimler landscape. We conclude that a corporate defendant's registration to do business in New York and designation of the secretary of state to accept service of process in New York does not constitute consent by the corporation to submit to the general jurisdiction of New York for causes of action that are unrelated to the corporation's affiliations with New York.
IV.
The plaintiffs contend in the alternative that the motions should be denied on the ground that additional discovery is needed because facts essential to justify opposition may exist but cannot now be stated (cf. CPLR 3211[d]). The plaintiffs have not alleged any facts that would support personal jurisdiction and thus have failed to indicate how further discovery might lead to evidence showing that personal jurisdiction exists here (see Leuthner v Homewood Suites by Hilton, 151 AD3d 1042, 1045; Mejia-Haffner v Killington Ltd., 119 AD3d 912, 915).
Accordingly, the Supreme Court should have granted the separate motions of Ford and Goodyear to dismiss the complaint insofar as asserted against each of them for lack of personal [*8]jurisdiction.
The orders entered May 31, 2016, are reversed, on the law, and the separate motions of the defendants Ford Motor Company and Goodyear Tire & Rubber Co. pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against them are granted.
LEVENTHAL, J.P., SGROI and LASALLE, JJ., concur.
ORDERED that the orders entered May 31, 2016, are reversed, on the law, with costs, and the separate motions of the defendants Ford Motor Company and Goodyear Tire & Rubber Co. pursuant to CPLR 3211(a)(8) to dismiss the complaint insofar as asserted against them are granted.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:We note that the motion court did not rule on the merits of the issue of whether U.S. Tires could properly oppose the motions of Ford and Goodyear. On their appeals, neither Ford nor Goodyear raise this issue. We therefore assume, without deciding, that U.S. Tires has standing to oppose the motions and that its opposition was not untimely.

Footnote 2:The arguments of nonparty U.S. Tires that specific jurisdiction is present in this case are not properly before this Court since they were not raised before the motion court.

Footnote 3:The parties observe that post Daimler, some New York lawmakers have proposed amending Business Corporation Law § 1301 to expressly provide that a corporation's application to do business in New York constitutes consent to personal jurisdiction in lawsuits in New York for all actions against the corporation (see 2015 NY Senate-Assembly Bill S4846, A6714). No such changes in the law have been effected to date, and we decline the appellants' invitation to opine on the constitutionality of any such possible amendment.